# Scales *v.* The State.

*Indictment for Murder.*

1. *Dying declarations.*—In a trial for murder, a statement made by the deceased on the evening before his death as to what occurred in the difficulty in which the defendant inflicted the fatal wound is properly admitted in evidence as his dying declaration, where it is made to appear that at the time the deceased made the statement he was convinced that his death was impending, and so expressed himself, and the brother of the deceased, and the attending physician who wrote down what the deceased said, each testified that the deceased made the statements that were written down, and that his mind was clear at the time.

2. *Killing in sudden rencounter with concealed weapon; when the statute on the subject does not apply.*—The statute (Code, § 3727) which provides that "when the killing in any sudden rencounter or affray is caused by the assailant by the use of a deadly weapon, which was concealed before the commencement of the fight, his adversary having no deadly weapon drawn, such killing is murder in the second degree, and may, according to the circumstances, be murder in the first degree," applies only to cases in which the "assailant"—the party who assaults—perpetrates the homicide; and has no application where the deceased, and not the defendant, was the assailant.

3. *Abstract charge; when giving of, not ground of reversal.*—In a criminal case, the giving of an abstract charge, which asserts a correct legal proposition, is not ground of reversal, where it is apparent from the record that it did not mislead the jury to the prejudice of the defendant.

4. *Use of deadly weapon not justified by an assault with the hand or fist.* An assault with the hand or fist, under ordinary circumstances, neither justifies nor excuses the use of a deadly weapon.

5. *Abstract, misleading, confusing, and argumentative charges* are properly refused.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case was found by a grand jury of St. Clair county, and charged the appellant, Robert Scales, with the murder of James Calvin McCain, "by shooting him with a pistol." On the application of the defendant, the venue was changed, and the case removed to the Circuit Court

[Scales v. The State.]

of Blount county, where the trial was had. The defendant was convicted of murder in the first degree, and sentenced to imprisonment in the State penitentiary for the term of his natural life.

The deceased was shot at his home in St. Clair county on the 9th of November, 1890, and died on the 13th of November, 1890. The State offered in evidence as the dying declaration of the deceased a written statement which was signed by him on the evening before his death, having first introduced witnesses who testified that the deceased said several times after he was shot that he was "bound to die," and that he at no time expressed any hope of getting well; that at the time he made the statement offered to be introduced he said that he would die; that Dr. E. P. Cason, who was deceased's attending physician, wrote down what was said, and the deceased signed the written statement; that the deceased was perfectly rational and his mind was clear when he made the statement, though he was somewhat under the influence of morphine, and had to be aroused at times. The defendant objected to the introduction of this statement, and excepted to the court's overruling his objection. Upon the introduction of all the evidence, the court charged the jury, and, in the course of its general charge, instructed them as follows : "If the deceased and the defendant entered into a sudden rencounter, and the deceased had no weapon drawn, but struck only with his fist, and the defendant was the assailant, and had a deadly weapon concealed, and drew and shot and killed the deceased, this is murder in the second degree, and would be murder in the first degree if the killing was from a formed design to take his life." The defendant excepted to this portion of the court's general charge, and also separately excepted to the refusal of the court to give each of the following written charge requested by him: (1.) "If the jury believe from the evidence that the defendant went to the house of the deceased simply and solely to have a friendly talk with the deceased about their differences, or to tell deceased why he, defendant, removed Mrs. Madison to the Chandler place; or if the jury on the whole evidence have a reasonable doubt as to whether this was the purpose of the defendant in going to the house of the deceased, or his purpose was to have a difficulty with the deceased, and a wordy altercation took place between deceased and defendant, in which deceased was in fault, and provoked the altercation, and the deceased struck the defendant, knocking him down, or staggered him, and was standing over or near

defendant, manifesting a purpose to pursue the assault, and the appearances of danger then surrounding the defendant were such as to produce in his mind a reasonable belief that he was about to suffer some great bodily harm at the hands of deceased, and in the condition defendant was in, there was no apparent way of retreat unless he increased his danger, or placed himself at an apparent disadvantage to defend himself, and under these circumstances he shot and killed the deceased, then it is the duty of the jury to acquit the defendant of all crime." (2.) "The court charges the jury that if they are reasonably satisfied from the evidence that after the defendant went to McCain's, Scales and McCain settled their differences, and agreed to be friends, and Scales started to go off, and McCain commenced an altercation with Scales about Scales' hogs getting into McCain's field and eating up his corn, and that Scales replied to McCain that it was not his (Scales') fault; that he, his father, and Bill fixed up the fence; and McCain then told Scales he. was a liar, and Scales told McCain he was a d—n liar, and thereupon McCain knocked Scales down, and manifested a purpose to pursue the fight by advancing towards Scales, and Scales, as he was rising, fired the fatal shot, and at the time he thus fired Scales was surrounded by such appearances of danger as produced in his mind a reasonable belief he was about to suffer some great bodily harm at the hands of McCain, and there was no reasonable means for Scales to avoid such danger unless he would apparently increase his peril, or put himself to a disadvantage to defend himself,— then, in such case, the law says the defendant had the right to shoot McCain in self-defense, and it would be the duty of the jury to acquit the defendant of all crime." (3.) "The court charges the jury that before they can convict the defendant of murder in the second degree, upon the grounds that the killing was done with a deadly weapon, concealed at the time, the State must show by the evidence beyond all reasonable doubt that the weapon was concealed, and the deceased did not know defendant had the pistol when the fight commenced; and, in addition to this, the State must show by the evidence beyond all reasonable doubt that the defendant was the assailant; that he was the aggressor, and provoked the difficulty; and, if the jury have any reasonable doubt upon either one or both of these propositions, then the jury should acquit the defendant of murder on this ground." (4.) "The court charges the jury that, if they have a reasonable doubt as to the truth or falsity of the defendant's evidence, then the jury should give the defend-

ant the benefit of such doubt, and believe his evidence."
(5) "If the jury believe the testimony in this case, or if they
have a reasonable doubt as to its truth, then the jury should
find the defendant not guilty." (6.) "If the jury believe
from the evidence that, although the defendant fought will-
ingly, and mutually abused each other, and the defendant
really and in good faith started off to withdraw from any
further conflict, and the deceased then struck the defendant
and knocked him down, or such lick staggered him, and
after this deceased advanced on defendant as though to keep
up the fight, and the jury believe that there were such ap-
pearances of danger then surrounding defendant as to pro-
duce in his mind a reasonable belief that he was about to
suffer some great bodily harm at the hands of the deceased,
and defendant was in such condition he could not retreat, or
to attempt to retreat wᵒ· ld have placed him at an apparent
disadvantage to defend himself, or would have increased his
peril, and under these circumstances defendant shot de-
ceased,—then in such case the law says the defendant is
guilty of no crime, and the jury should find him not guilty."
(7.) "If the jury believe from the evidence that the defend-
ant fought willingly, and used a deadly weapon, and inten-
tionally shot the deceased, yet if, upon considering the
whole evidence, the jury have a reasonable doubt as to
whether or not the defendant shot the deceased unlawfully
or in self-defense, then it is the duty of the jury to give the
defendant the benefit of such doubt, and find him not
guilty." (8.) "If the jury believe from the evidence that
the deceased, James Calvin McCain, knew before he entered
into the fight in which he was shot and killed by defendant
that defendant was armed with a pistol, then the jury can
not convict the defendant of either murder in the first or
second degree, under section 3727 of the Code of Alabama;
and, in determining whether or not deceased did know that
defendant was armed with such pistol before he entered into
the fight with defendant, they may look to the statement of
deceased found in the dying declarations of deceased, that
defendant was standing with his right hand on the shoulder
of deceased, and his left hand in his left pocket, on his
pistol, before the fight or affray ensued between deceased
and defendant." (9.) "The undisputed evidence in this case
shows that the deceased, James Calvin McCain, knew before
he entered into the fight in which he was shot and killed by
defendant that the defendant was armed with a pistol. The
dying statement of the deceased, which is in evidence in
this case, proves the fact that deceased knew defendant was

[Scales v. The State.]

armed with a pistol before deceased and the defendant entered into the fight, and, such fact being uncontroverted, then the jury can not convict the defendant of murder in the first or second degree, for the reason that the killing was done in a sudden rencounter or affray by defendant, with a deadly weapon, which was concealed from the deceased before they entered into the fight in which deceased was killed." (10.) "The court charges the jury that the danger that excuses one for killing another need not be a real and actual danger; it is sufficient if there be only appearances of danger; not necessary that there should be in fact real danger. So in this case, if the jury are reasonably satisfied from the evidence that at the time the defendant shot the deceased there were appearances of danger surrounding the defendant, such as to produce in his mind a reasonable belief that he was about to suffer some great bodily harm at the hands of the deceased, and there was no apparent way of escape unless the defendant apparently increased his danger, or placed himself at an apparent disadvantage to defend himself, and that the defendant was not the aggressor, and under these circumstances the defendant killed the deceased,—then it is the duty of the jury to find the defendant not guilty of any offense." (11.) "The court charges the jury that, although they may believe from the evidence that the defendant had a pistol on Sunday evening before the shooting, yet this is no evidence within itself that the defendant shot the deceased unlawfully, or is guilty." (12.) "The court charges the jury that the defendant had a right, and that it was perfectly legitimate for the defendant, to go to the gate of the deceased, and to carry a pistol with him, if he, defendant, went to such gate for a lawful purpose, and carried such pistol in a lawful manner. And if the jury further believe from the evidence that after defendant had so gone to the gate of deceased, that defendant did not provoke a difficulty with deceased, and that defendant used no insulting or opprobrious words or language to deceased till after deceased had told him, defendant, he was a liar, then defendant would be reasonably free from fault in bringing on the difficulty, and the jury should, under such circumstances, find that the deceased was the aggressor, and the defendant could invoke the law of self defense."

W. H. DENSON, M. M. SMITH, and E. J. ROBINSON, for appellant, cited *McHugh v. State*, 31 Ala. 317; *Parker v. State*, 88 Ala. 4; *DeArmond v. State*, 71 Ala. 351; Wharton on Criminal Ev. § 727; *Tatum v. State*, 63 Ala. 147; *Eiland v.*

[Scales v. The State.]

*State*, 52 Ala. 322; *White v. State*, 72 Ala. 195; *Bohannon v. State*, 8 Bush (Ky.) 481.

WM. L. MARTIN, Attorney-General, for the State, cited *Darby v. State*, 92 Ala. 9; *Hamil v. State*, 90 Ala. 577; *Pulliam v. State*, 88 Ala. 1; *Ward v. State*, 88 Ala. 441; *Stewart v. State*, 78 Ala. 436; *Kennedy v. State*, 85 Ala. 326; *Eiland v. State*, 52 Ala. 322; *Mitchell v. State*, 60 Ala. 26; *Ex parte Nettles*, 58 Ala. 268; *Shell v. State*, 88 Ala. 14; Wharton Criminal Law (9th ed.), § 484.

STONE, C. J.—There is much testimony in this record, and nothing to contradict it, that for several hours before the homicide was perpetrated defendant was making threats, sometimes without naming the object of such threats, but, at others, calling the name of deceased as the person against whom his animosity was directed. The testimony is also uncontradicted that the rencounter and homicide took place at the home of deceased, and at the gate in front of his residence, on a Sabbath evening, just after nightfall. It is also shown that defendant and one Jarvis went in company to McCain's dwelling, and that Jarvis hallooed, and called deceased out. There is proof, uncontradicted, that defendant had, at the time, a loaded pistol in his pocket, and all the facts and circumstances tend to show that Jarvis had no object personal to himself in making the visit. The circumstances tend equally to show that the visit was made, and McCain called out, for some purpose personal to the defendant. When deceased went out in response to the halloo, defendant was not visible, but soon walked up and engaged in conversation with deceased. Up to this point the testimony is all one way.

There is a conflict as to who uttered the first insulting language. Deceased, in his statement, charges it to the defendant, and the widow of deceased, in her testimony, tends to confirm his statement. Defendant testified that deceased gave the insult, which provoked a similar retort from him, and that this was followed immediately by a blow from deceased's fist. The uncontroverted testimony is that deceased, who is not shown to have been armed, struck the first blow, that Jarvis immediately got between them, and that then defendant fired three shots, one of which was fatal. We have made this summary of the testimony, because it is proper to have it in view while we comment on the charges given and refused.

We feel justified in calling attention to the fact that

Jarvis was not called. as a witness, and no explanation is
offered why it was not done.   He accompanied defendant to
McCain's residence, called McCain out, and the circum-
stances as they appear in the record tend to show that in
doing so he was serving defendant, not himself.   He wit-
nessed the entire interview, the altercation, the rencounter,
and all that took place.   When life is taken, unless the tes-
timony which proves the killing proves also the justifica-
tion or extenuation, the burden then rests on the defendant,
either to excuse, or to extenuate the offense.   If the circum-
stances do not show excuse, justification, or immediate
provocation, the law raises the presumption of malice.
*Sylvester v. State*, 72 Ala. 201; 3 Brick. Dig. 216, § 524.

We do not think the Circuit Court.erred in admitting the
dying declarations in evidence.   The brother of the de-
ceased and the physician who wrote down what was said
each testified that the deceased made the statements that
were written down, and that his mind was clear at the time.
The facts are unlike those presented in the case of *McHugh
v. State*, 31 Ala. 317.

Section 3727 of the Code of 1886 was made to figure in
the trial of this case.   Its language is :   "When the killing
in any sudden rencounter or affray is caused by the assailant
by the use of a deadly weapon, which was concealed be-
fore commencement of the fight, his adversary having no
deadly weapon drawn, such killing is murder in the second
degree, and may, according to the circumstances, be murder
in the first degree."   What is the meaning of the word
"assailant" in this section?   "Assailant" means one who
assails, or who assaults, the aggressor.   All the testimony
shows that McCain was the assailant; the one who com-
mitted the first assault, the one who struck the first blow.
It follows that § 3727 of the Code has nothing to do with
this case.

If one assaulted, suddenly and under the maddening in-
fluence of the blow, slays his assailant, and there is nothing
else in the transaction, this is manslaughter, and not mur-
der.   But murder "is frequently committed during personal
rencounters into which the parties enter mutually, or in
many cases in which the party slain strikes the first blow.
Murderers sometimes provoke an enemy or intended victim
to assault them, that, under the protection which the law is
supposed to furnish them, they may wreak vengeance upon
him, who, by this contrivance, is made to appear to be the
aggressor.   A homicide thus perpetrated is a most atrocious
murder in the first degree."—*Mitchell v. State*, 60 Ala. 26;
*Ex parte Nettles*, 58 Ala. 268.

Another principle should be here stated. "If the blow given, or about to be given, be not such as to endanger his [the assaulted's] life, or to expose him to grievous bodily harm, as the law defines that term, then a fatal blow struck by him, even from sudden passion and without formed design, is manslaughter in the first degree. And a killing under circumstances which do not amount to proof of formed design—[willful, deliberate, malicious and premeditated]—which is defined above as constituting murder in the first degree, and which is not toned down to manslaughter, or to self-defense, as defined above, is murder in the second degree. "We have spoken of formed design as of two classes, general and special. The former is evidenced by carrying weapons likely to produce death, with the purpose previously formed to use them in resentment of any blow that may be received, come fro·ı what quarter it may, even though the blow be of a character not endangering life or limb. Such formed design has no particular person as its objective aim. It is aimed at whoever may become the assailant. If preparation be made, and the design be formed and executed by slaying an adversary in resentment or resistance of a blow not likely to produce death, or inflict grievous bodily harm, this savors largely of the extreme wickedness of universal malice, and would be murder; and if such design was formed willfully, and carried into execution pursuant to such formed design, this would be murder in the first degree."—*Mitchell v. State, supra; Ex parte Nettles, supra.*

When one who is without fault is attacked in such manner as to endanger his life, or expose him to grievous bodily harm, and he is without apparent means of safe escape therefrom, the law authorizes him to anticipate his adversary, and to strike and even slay his assailant, if such extreme measure appears to be reasonably necessary to his own security.—3 Brick. Dig. 219, § 570 *et seq; Bostic v. State,* 94 Ala. 45. But peril of a battery, from which great bodily harm can not be reasonably be apprehended, will not justify the taking of life, even though there be no reasonable mode of escape.—*Eiland v. State,* 52 Ala. 322; *Davis v. State,* 92 Ala. 120. Fisticuff blows do not, as a rule, inflict the grievous bodily harm, which, other means of escape being cut off, will excuse the slaying of the assailant. "When a man is struck with the naked hand, and has no reason to apprehend a design to do him great bodily harm, he must not return the blow with a dangerous weapon."—*Shorter v. People,* 2 Comstock, N. Y. 194. "A mere assault, however,

not directed at life or chastity, or other high right, can not excuse homicide. Hence, if a deadly weapon be not used by the assailant, or other circumstances do not exist to indicate a felonious attempt, for the assailed to take life is at least manslaughter."—1 Whar. Cr. law, § 484. "The jury must be satisfied that unless he (the manslayer) had killed the assailant, he was in imminent and manifest danger either of losing his own life, or of suffering enormous bodily harm." 3 Greenl. Ev. § 116. "I take the rule to be settled, that the killing of one who is an assailant must be under a reasonable apprehension of a loss of life or great bodily harm; and the danger must appear so imminent at the moment of the assault, as to present no alternative of escaping its consequences, but by resistance."—Logue v. Com. 2 Wright (Pa.) 265; 9 Amer. & Eng. Encyc. of Law, 540.

We have shown above that the testimony in this case does not bring it within the influence of section 3727 of the Code of 1886. That statute applies only to cases in which the assailant—the party who assaults—perpetrates the homicide. All the testimony shows that McCain was the assailant—the person who struck the first blow. It follows that the part of the charge of the court, set out in the bill of exceptions and excepted to, was abstract in this, that there was no testimony to which it was applicable. The assailant was slain.

It is not for us to say, under all the circumstances shown in this case, whether or not the jury in their verdict of guilty went beyond what the testimony authorized them to find, nor whether the punishment they inflicted is excessive. They had the witnesses before them, could judge of their manner, and they were the sole judges and arbiters, under the oath they took, of the credit and weight they would accord to each witness. The facts were for their determination, governed by their own consciences, under the rules of law as declared to them by the court. There is no arbitrary rule by which human testimony is believed or disbelieved. Juries perform their full duty when they obey the court's instructions as to the law, and the teachings and promptings of their own judgments and consciences as to the facts. When they thus act they render a "true verdict according to the evidence." We must not and do not intimate what impression the testimony in this record makes upon us. We have stated certain rules of law, and the duty rested on the jury to determine from the testimony to what extent this case was brought under those rules.

An abstract charge given to a jury, if it assert a correct

legal proposition, is, as a general rule, no ground of reversal. 3 Brick. Dig. 113, §§ 107–8. The affirmative charge given asserts a correct principle of law, and we find nothing in the record to convince us it misled the jury. We suppose it did not, for their verdict was that defendant was guilty of murder in the first degree. This shows that the finding of the facts was not limited to the case for which section 2727 of the Code makes provision. To render the verdict the jury did render, they must have gone further and ascertained that the killing was "willful, deliberate, malicious and premeditated." One phase of the testimony—perhaps the entire testimony, except that of defendant himself,— tends to prove such was the case. In giving this charge the court committed no reversible error.

Of the charges asked by defendant and refused, those numbered 1, 2, 6 and 10, each of them, was likely to mislead the jury as to the nature of the threatened or impending "grievous bodily harm," which will excuse the defensive use of a deadly weapon. An assault with the hand or fist, under ordinary circumstances, neither justifies nor excuses the use of a deadly weapon. These charges were rightly refused.

Charges 2, 3, 8 and 9 are inapplicable to this case, because 3727 of the Code exerts no influence on its determination.

Charges 2, 4, 5, 6, 7, 9, 11 are all more or less misleading, and several of them are only an argument. They were rightly refused.

Charge 12, under the testimony in this case, was both abstract and confusing. None of the charges requested should have been given.

Affirmed.

