390 So.2d 1070 (1980)
Yvette Rena HOWARD
v.
STATE.
1 Div. 101.
Court of Criminal Appeals of Alabama.
May 27, 1980.
On Rehearing August 19, 1980.
Rehearing Denied October 7, 1980.
*1071 W. Gregory Hughes, Mobile, for appellant.
Charles A. Graddick, Atty. Gen. and Michael E. McMaken, Sp. Asst. Atty. Gen., for appellee.
CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and a sentence to ten years imprisonment for manslaughter in the first degree of Barbara Young upon a trial by a jury on an indictment charging murder in the first degree. The case was consolidated for trial, on motion of defendant, with a case against the same defendant on an indictment for assault with intent to murder Betty Jo Pettaway. The jury found defendant not guilty in the other case.
The undisputed evidence shows that Barbara Young was killed by one or both of two shots of a pistol fired by defendant, that Betty Jo Pettaway was hit by another shot from the pistol fired by defendant, and that the three shots occurred in rapid succession.
The only seriously contested issue in the homicide case was as to the asserted defense of self-defense, or defense of defendant's mother, or both, included within the defendant's plea of not guilty.
There is no claim by either party that there is any repugnancy between the verdict in the instant case and the verdict of not guilty in the other case, but we note, to avoid question, that probably the verdict of the jury in the other case was based upon a finding in effect that defendant did not intentionally shoot Betty Jo Pettaway and that Betty Jo Pettaway was hit by a shot intended for Barbara Young.
The tragedy occurred on a Sunday evening, April 22, 1979, in the backyard of a "hit house," a term employed by the witnesses as a house, a residence, at which liquor was sold without a license and gambling by cards was promoted.
The two alleged victims and defendant and her mother, Rosena Howard, engaged in a game of cards in a back room of the house, at which at the time were approximately twenty-five persons, most of whom *1072 were imbibing freely. At some point in the card game, defendant's mother accused the alleged victim of the homicide of cheating. After the game broke up, defendant's mother and Barbara Young started fighting inside the house. The fight was broken up by the intervention of others; defendant, her mother and a friend then went outside. Betty Jo Pettaway and Barbara Young followed them outside and a fight between defendant and Barbara broke out again. While the fight was going on outside, defendant's mother obtained a pistol from her purse and struck Barbara over her eye with it. The pistol was taken from defendant's mother by a man and given to a female from whom defendant obtained the pistol and fired the three shots while her mother and Barbara Young were fighting and while Barbara had defendant's mother by the hair.
Many details are omitted from this summary of the evidence, which perhaps would be more confusing than helpful. There is no need for them in connection with our consideration and determination of the issues presented on this appeal, other than as they may hereafter be mentioned with reference to some of such issues in particular.
Defendant objected to the introduction in evidence of the pistol, and three empty cartridges therefrom, and accompanying expert testimony to the effect that the pistol was the one fired by defendant and that the empty cartridges had been fired therefrom. Notwithstanding appellant's insistence to the contrary, we find that the evidence well traced the pistol and the three cartridges from the custody of defendant's father, who testified in the case, through the hands of three officers to the witness who testified as a ballistics expert. As defendant contends, there was some discrepancy in the evidence as to who was the person who delivered the gun and empty cartridges to the expert, but there could hardly be any reasonable doubt as to the correct identity of the pistol and the empty cartridges. Furthermore, a determination of guilt or innocence of defendant could not conceivably have turned upon any possible misidentification of the particular pistol fired by defendant or any one of the three particular cartridges fired from the gun. As appellant well argues in other parts of her brief, no other pistol was involved; no cartridge other than the three cartridges was involved. Although evidence as to the identity of the pistol and the three cartridges and the fact that they were fired from the same pistol could have well been left out of the case, appellant's contention with reference to its admission in evidence is without merit.
Contrary to appellant's argument, we find that the statement made to the officers after defendant was taken into custody have all of the pre-Miranda and post-Miranda requirements for the admission in evidence of confessions or other inculpatory statements.
Another insistence of appellant is to the effect that although the body of the deceased was definitely shown by a testifying pathologist, on post-mortem examination, to be the body of Barbara Young there was no evidence to the effect that such Barbara Young was the same Barbara Young that had been killed by defendant. There is no semblance of any reason for believing that the body of the Barbara Young that was killed by defendant could have been misidentified as the body of the Barbara Young whom the pathologist examined. This contention is without merit.
The trial court refused the following written charge requested by defendant:
"44. I charge you, members of the jury, that the law requires the State to prove beyond a reasonable doubt that the Defendant acted in the absence of self-defense."
It should be clear that the burden is not upon the defendant to prove his asserted defense of self-defense. In any homicide case in which there is evidence of self-defense, that is, evidence sufficient to present a jury issue as to self-defense, the burden is upon the State to satisfy the jury by the evidence beyond a reasonable doubt that defendant is guilty, and this burden is not *1073 transferred from the State to defendant by reason of applicability to the particular case of the defense of self-defense or defense of another. Even so, if any virtue is to be found in defendant's requested charge 44, it is an oversimplification of the principles of law pertaining to the subject as comprehensively set forth in Vaughn v. State, 293 Ala. 365, 304 So.2d 6 (1974), on remand, 53 Ala. App. 744, 304 So.2d 12, cert. denied, 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83. A similar charge set forth in Wilkins v. State, 57 Ala.App. 55, 325 So.2d 926 (1975):
"The court charges the Jury that where the Defendant introduces evidence of self-defense to justify the killing of deceased, the burden is upon the State to prove beyond a reasonable doubt that the killing was not in self-defense, and unless the State has done so in this case, you must find the defendant not guilty."
was held to be "too broad as to the burden on the State." Charge 44 is subject to the same infirmity. Its refusal was not error.
Appellant urges error by reason of the court's refusal of defendant's requested charge No. 10:
"I charge you, members of the jury, that the Prosecution must prove its charge, and prove it beyond a reasonable doubt, by evidence. The assertions of counsel are not evidence."
Appellant relies upon Morse v. State, 49 Ala.App. 203, 269 So.2d 916 (1972). In Lamar v. State, Ala., 356 So.2d 680, rev'g Ala.Cr.App., 356 So.2d 677, Justice Shores makes it clear that what was held in Lane v. State, 85 Ala. 11, 4 So. 730 (1887), relied upon in Morse v. State, supra, as to a similar charge, should be restricted to the circumstances shown in Lane in which there had been an improper argument by the prosecuting attorney. There is no contention here that there was any improper argument by counsel for the State. The record shows affirmatively that no objection was made as to any argument by counsel for either party. Charge 10 was properly refused. Brown v. State, Ala.Cr.App., 369 So.2d 56 (1979).
A part of the transcript of the court's oral charge is as follows:
"There is one other thing in the oestion [sic except as to the supplied emphasis] of self-defense that the law says a person in self-defense is justified only in using such force as is necessary to repel an attack on him and that in the eyes of the law, if you attacked me with your fist, I don't have the right to shoot you to stop the attack."
The transcript also shows that at the conclusion of the court's oral charge the following occurred:
"... Are there any exceptions to the oral charge?
"MR. COPELAND [State's counsel]: Maybe you could clarify. Since we are dealing with so many, it would be possible to have an assault to murder on the one and a lesser murder on the other. That it can change with the passing of just a few seconds.
"THE COURT: You mean transferring from the one she says she was shooting at to the one she hit?
"MR. HUGHES [Counsel for Defendant]: In addition to those, we would accept [sic] one portion of the Court's charge, and I possibly could have misunderstood it when the Court said that if one were attacked by somebody with fists, that certainly there would be no right to retaliate with a gun or shoot him. I would ask the Court to add to that, that it would depend on the circumstances under which there was an attack by fists or whatever.
"THE COURT: I charge you Ladies and Gentlemen ...."
The transcript shows that in continuing to charge the jury, the court further instructed the jury as to the point mentioned by State's counsel, as quoted above, but did not again discuss the point made by defendant's counsel, as quoted above.
The portion of the court's oral charge quoted above as to the right of a person to shoot another who has attacked him with his fist is not a correct statement of the law, although it can be a very powerful and persuasive statement that the State would have the right to make in argument *1074 to a jury in its plea that a defendant should be found guilty of a homicide notwithstanding the defense of self-defense.
A correct statement of the precise applicable principle is found in the opinion of Chief Justice Stone in Scales v. State, 96 Ala. 69, 76, 11 So. 121 (1891-92):
"... Fisticuff blows do not, as a rule, inflict the grievous bodily harm, which, other means of escape being cut off, will excuse the slaying of the assailant. `When a man is struck with the naked hand, and has no reason to apprehend a design to do him great bodily harm, he must not return the blow with a dangerous weapon.'Shorter v. People, 2 Comstock, N.Y. 193...."
Appellant relies upon George v. State, 145 Ala. 41, 40 So. 961 (1906), which is substantially in point as to what the trial court incorrectly stated in this case, as well as in that case. In George, the trial court had stated "that a blow from the hand or fist never justified the use of a deadly weapon." The Supreme Court said, "The law is that a blow from the hand or fist under ordinary circumstances, neither justifies nor excuses the use of a deadly weapon." (Emphasis supplied) It reversed the trial court for its failure to give defendant's requested charge 1:
"Gentlemen of the jury, I charge you that an assault with the hand or fist never justifies or excuses a homicide under ordinary circumstances, and it is for you to decide whether the facts in this case are within the ordinary reason or not."
It appears from George, supra, that there was no exception to the pertinent part of the court's oral charge but that the erroneous instruction quoted therefrom was a material factor in the reversal by reason of the failure to give defendant's requested charge 1.
As to the question under consideration, Dilburn v. State, 16 Ala.App. 371, 77 So. 983 (1918), is directly in point. It states in less than a one column opinion:
"The trial judge in his oral charge charged the jury:
"`He [the defendant] would not be justified in using a deadly weapon if struck by the fist, or any other assault which would not likely cause serious bodily harm.'
"This was in effect charging the jury that under the evidence the defendant was not justified in using a deadly weapon, and that the blow struck by the fists was not likely to cause serious bodily harm, which was the very question then being submitted to the jury. The rule is that the killing of one who is the assailant must be under a reasonable apprehension of loss of life or of great bodily harm, and the danger must appear to be so imminent at the moment of the assault as to present no alternative of escaping its consequences except by resisting. Scales v. State, 96 Ala. 69, 11 So. 121. It was said in Shorter's case [Shorter v. People] 2 N.Y. (Comstock) 193, 51 Am. Dec. 286, `When a man is struck with the naked hand, and has no reason to apprehend a design to do him great bodily harm, he must not return the blow with a dangerous weapon,' and this expression was quoted with approval in the Scales Case, supra.
"But it is a question for the jury to satisfy itself of all the evidence in the case whether or not the defendant was in imminent and manifest danger either of losing his own life or of suffering grievous bodily harm, or that it appeared so to the mind of a reasonable man. 3 Greenl.Ev. § 116. That part of the oral charge of the court excepted to was in conflict with the foregoing views, and for that error the judgment must be reversed."
The part of the court's oral charge in the instant case to which an exception was taken contains the same vice as that found in the oral charge in Dilburn and requires a like result, a reversal.
There may be ground for misgiving in the conclusion just stated to be found in the action of defendant's counsel, as shown by the transcript, in inviting the attention of the court to its erroneous instruction, but *1075 we think that to say that an exception was not taken properly and sufficiently would be hypercritical. Appellee has not taken any such position and is to be commended therefor, we think. Notwithstanding the language of the transcript stating that defendant said "accept" instead of "except to," we are constrained to note that such reportorial error has occurred much more often in recent years than in preceding decades. We note also a misspelling of "question," which, of course, is not attributable to defendant's counsel. Perhaps, it would have been better for defendant's counsel to have more definitely and positively excepted to the particular language of the court's charge and done nothing more as was the action of defendant's counsel in Dilburn, supra, or if he desired some amelioration of the erroneous instruction, requesting in writing a qualifying or explanatory charge as was done in George, supra. Even so, it is clear to us that defendant made known her exception to the particular erroneous instruction of the court in its oral charge and that he should not be denied the benefit of it. Even if appellee argued strongly to the contrary, our opinion would be the same. Appellee has taken no position to the contrary, and we feel that we are not justified in doing so.
We have considered appellee's counter argument to appellant's last insistence which chiefly is to the effect that defendant "was not entitled to assert the defense of self-defense." We agree with appellee that the circumstances taken as a whole do not compellingly, or even strongly, disclose all of the essential elements of self-defense or the defense of another, but the case was tried almost exclusively on that issue. It was so treated by the parties and by the court. The issue was submitted to the jury. It was recognized by all concerned as the pivotal issue as to defendant's guilt of manslaughter in the first degree. The jury found her guiltless of malice aforethought, as well as of deliberation and premeditation. For us to hold that there was no jury issue as to self-defense or defense of another would be equivalent to saying that it was not within the province of the jury to find that she was lawfully defending herself or her mother at the time she fatally shot the alleged victim. We are unable to say the submission of the issue to the jury was a mere exercise in futility upon full consideration of all the circumstances and the unanimity of view of all concerned, the State, the defendant and the court, as manifested by them or their representatives on the trial. For us to do so would be invasive of the province of the jury, which the trial court did not do except in one particular, in saying that "If you attack me with your fist, I don't have the right to shoot you to stop the attack." By this statement, the court pierced the heart of the only defense asserted by defendant, the only controverted issue in the case. We are not saying that without the giving of the erroneous instruction, the jury could not have well returned the same verdict that it did, but we have no doubt that it could not have found defendant not guilty without disregarding the instruction.
For the error indicated, the judgment of the trial court must be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Judges concur.

ON REHEARING
CLARK, Retired Circuit Judge.
Appellee's application for a rehearing is submitted in two parts.

PART ONE
A document filed by appellee on June 9, 1980, consists of an "application for rehearing," a request for the "findings of additional facts" permitted by Rule 39(k), *1076 ARAP and "supportive brief and argument." Eight separate categories of claimed "additional facts" are listed. In our opinion, they do not come within the purview of "additional facts" contemplated by the Rule. To a great extent they constitute conclusions or opinions reached by appellee. Under these circumstances, no attempt to accede to the request is made.
The "supportive brief and argument" accompanying the application for rehearing is little different from that presented in the brief and argument on original submission. But for the matter presented in Part Two, the opinion and judgment on original submission should stand.

PART TWO
Concomitant with the filing of appellee's application for rehearing a motion was presented by appellee under Rule 10(f), ARAP for the certification and transmittal by the Clerk of the Circuit Court to this Court of full, true and correct copy of the trial court's oral charge, which motion was granted on June 10. The Clerk of the Circuit Court promptly complied with the order by transmitting to this Court a certified copy of the "full Oral Charge of the Court as Certified by the Court Reporter and filed in the office of the Clerk of the Circuit Court of Mobile County."
The full oral charge of the trial court as now presented discloses that there was omitted from the transcript of the court's oral charge on original submission the following:
"Now, of course, that could be changed by the fact if a 260 pound football tackle full back was attacking me, then to shoot to stop the attack to help a little 160 pound old man it might be different. But the law as a matter of law says that you are entitled to use only such force to repel an attack on on [sic] yourself, and as I told you just now, on a member of your immediate family."
The part of the instruction quoted above, omitted from the transcript on original submission, is immediately after the following portion of the court's charge furnishing the basis for the reversal on original submission:
"There is one other thing in the question of self-defense that the law says a person in self-defense is justified only in using such force as is necessary to repel an attack on him and that in the eyes of the law, if you attack me with your fist, I don't have the right to shoot you to stop the attack."
On July 7, 1980, appellee filed a supplemental brief in support of its application for rehearing, citing specifically the unfortunate omission on original submission of a material part of the court's oral charge, as quoted above, that qualified what the court had just stated that we found was properly subject to the exception taken at the trial.
Appellee now says:
"The trial court's oral charge was, when viewed in its entirety, and especially including the portion heretofore omitted, proper and correct and did not constitute grounds for reversible error."
We are now presented with a greatly different question from that presented on original submission.
The signification of what the trial court said that formed a basis for our determination on original submission was materially qualified by what we have since learned the court said immediately thereafter. In its completeness on the particular subject, the instruction was not subject to the exception taken by defendant's counsel, which ended by his statement, "I will ask the Court to add to that, that it would depend on the circumstances under which there was an attack by fists or whatever." By the illustration given by the trial court, although a more appropriate one probably could have been given, the court made it clear that the principle of law it had stated was not applicable to all circumstances but that it "would depend on the circumstances under which there was an attack by fists or whatever."
The charge as presented on original submission was offensive to the rationale of Scales v. State, 96 Ala. 69, 11 So. 121 (1891-92); *1077 George v. State, 145 Ala. 41, 40 So. 961 (1906) and Dilburn v. State, 16 Ala.App. 371, 77 So. 983 (1918). The charge in its fullness as now presented is free of such offense.
The application for rehearing should be granted and the judgment of the trial court affirmed.
APPLICATION FOR REHEARING GRANTED.
AFFIRMED.
All the Judges concur.