BOOKOUT, Judge.
Murder; sentence: life imprisonment.
Late on the evening of August 20, 1980, Lawrence Grizzard was shot and killed outside of his Huntsville home. When the police arrived, appellant came out of the victim’s house onto the front porch with a pistol in his hand. The appellant held both of his hands over his head and said, “Here is *82 the gun, I shot him.” Appellant was arrested and charged with murder (Code § 13A-6-2(a)(l)). '
Between 6:00 and 6:30 p. m., appellant went to Ditake’s Lounge after work. His sister, Hazel Morris, joined him at the lounge two hours later, and they both drank several beers. About midnight appellant called a taxi cab to drive them home. The taxi cab carried them to Lawrence Griz-zard’s house. Hazel Morris had been living with Grizzard for over a year. When they knocked on the front door, they got no answer so appellant went to the bedroom window where he knocked and asked Griz-zard to open the door. Appellant told the police that the victim responded, “Tell her to get the hell away from here and don’t come back.” Appellant and his sister returned to the waiting taxi cab and instructed the driver to carry them to Ms. Morris’s car at another lounge to get her keys.
They reached Ms. Morris’s car, and she drove her car back to Grizzard’s house alone. Appellant testified that he was “worried” about his sister so he had the taxi cab driver carry him back to Grizzard’s residence. When appellant and the taxi cab driver arrived there, the front door was partially opened and they could see Hazel Morris and Grizzard scuffling inside. Appellant leapt from the taxi cab, ran inside the house, and joined in the affray. He testified that his sister and the deceased were fighting over a pistol, and appellant wrestled the gun away from the victim and put it in his back pants pocket.
Appellant avers that as Grizzard started out of the front door he threatened, “You sorry son-of-a-bitch, I am going to kill you, both of you.” Grizzard walked to his car parked in the driveway and got in the driver’s seat. Ms. Morris and the appellant followed Grizzard outside, and the appellant claims that Hazel informed him that “he [Grizzard] has a gun in the car.” They both walked up to the driver’s side of the car where Grizzard was sitting. Appellant told the deceased, “Griz, I have got your gun.” Appellant testified that Grizzard then started to reach toward the glove compartment, and appellant shot him.
While admitting that he killed Grizzard, appellant entered a plea of not guilty. His defense pivoted on whether the shooting was justifiable self-defense or protection of a third person. The State presented testimony from the taxi cab driver who witnessed the entire incident and testimony from various investigating police officers. The defense offered character witnesses, and the appellant took the witness stand. Appellant insists that the trial court committed reversible error during the direct examination of the appellant when the objections of the district attorney were sustained to the following questions:
“Q. When you shot Lawrence Grizzard, did you believe he was about to shoot your sister?
“MR. GARDNER: I object to what he believed.
“MR. KEMPANER: Well, Your Honor, his mental intent at the time.
“THE COURT: I sustain it.

“Q. Were you afraid for yourself or for your sister?
“MR. GARDNER: I object to that.
“THE COURT: Well, I am going to sustain it.”
Appellant contends that his responses to the above questions were crucial in order for the jury to determine whether he reasonably believed that he had to shoot Griz-zard so as to protect his sister. Under the peculiar facts presented here, we find that the actions of the trial court constituted reversible error.
Every killing is unlawful unless expressly excused or justified by law. Kent v. State, 367 So.2d 508 (Ala.Cr.App.1978), cert. denied, 367 So.2d 518 (Ala.1979). When the State demonstrates that a homicide has occurred, the defendant must then prove circumstances in mitigation, excuse, or justification unless they are shown by the evidence produced against him. Flint v. State, 370 So.2d 332 (Ala.Cr.App.1979). These circumstances are to be ascertained by the jury. Oliver v. State, 17 Ala. 587 *83 (1850); Chastain v. State, 36 Ala.App. 186, 54 So.2d 623, cert. denied, 256 Ala. 280, 54 So.2d 629 (1951).
Section 13A-3-23, 1975 Alabama Code (amended 1979) represents a major departure from the previous common law of justification in Alabama. Section 13A-3-23, Commentary, page 38. The statute provides in part:
“(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
“(1) Using or about to use unlawful deadly physical force.”
(Emphasis added.)
No longer must a defendant intervening in another person’s defense “stand in the shoes” of the person aided. The test “reasonably believes” shifts the emphasis to defendant’s reliance on reasonable appearances rather than exposing him to the peril of defending another where appearances were deceiving and there was no actual imminent danger. Section 13A-3-23, Commentary, page 38. If the circumstances presented here were such as to induce a reasonable belief that the victim was using or “about to use unlawful deadly force” on appellant’s sister, then the law would acquit the appellant of all guilt. However, if there was no reasonable ground for believing this, appellant could not be justified by law.
In Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974), our supreme court adopted the contemporary rule that “a witness, on direct examination, may testify as to his intention, motive, or other physically unexpressed mental state, provided that the testimony is material to the issue of the case.” Later, in Mullins v. State, 359 So.2d 843, 848 (Ala.Cr.App.), cert. denied, 359 So.2d 849 (Ala.1978), we wrote that “[t]he materiality of the evidence offered by the holder of this uncommunicated intent is left within the discretion of the trial judge, and the admission or exclusion of such evidence shall not be reviewed upon appeal, except for an abuse of discretion.”
The Supreme Court of Alabama held in Walker v. State, 260 Ala. 451, 71 So.2d 47 (1954), that a defendant may testify that he was “scared,” finding that fear is not a mental operation. Likewise, this court has determined that a defendant may testify that he did not intend to kill his victim. Mullins, supra; Grimes v. State, 56 Ala. App. 439, 322 So.2d 729, cert. denied, 295 Ala. 403, 322 So.2d 733 (1975).
Since the test prescribed by § 13A-3-23 is what the defendant reasonably believed, the question of defendant’s belief at the time of the killing was a material issue before the jury. We find that Armstead v. State, 57 Ala.App. 459, 329 So.2d 150 (1976), cited in the State’s brief, has been made inapplicable by enactment of § 13A-3 — 23.
The appellant’s belief that the victim was about to use unlawful deadly force was the key issue raised by the defense at trial, there being no other area of genuine contest. By denying the appellant an opportunity to respond to those questions set out above, the trial court “pierced the heart of the only defense asserted by defendant, the only controverted issue in the case” Howard v. State, 390 So.2d 1070, 1075 (Ala.Cr.App.), cert. denied, 390 So.2d 1077 (1980). Therefore, we find an abuse of discretion when the trial judge sustained the prosecutor’s objections to these questions.
REVERSED AND REMANDED.
All the Judges concur.